FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Southern Division

99 NOV 22 PM 2:42

U.S. DISTRICT COURT
N.D. OF ALABAMA

BOBBY MCBRAYER, )
)
Plaintiff, )
)
v. ) CV-99-P-0145-S
)
SONAT SERVICES, INC., )
)
Defendant. )

ENTERED
NOV 22 1999

## Opinion

Before the Court is a Motion for Summary Judgment filed by Defendant Sonat Services, Inc. ("Sonat") on September 29, 1999. The matter was heard with oral argument at the October 29, 1999 motion docket. For the reasons expressed below, the Motion for Summary Judgment is due to be granted.

### I. Facts

Plaintiff Bobby McBrayer is a fifty-seven year old former employee of the Defendant. He was originally hired by Sonat in February 1970 as a Junior Tax Accountant. Plaintiff was later promoted to Tax Accountant and then to Senior Tax Accountant. In 1987, Plaintiff was named Tax Supervisor; however, he was reclassified as a Senior Tax Accountant in 1992 due to corporate restructuring. In late 1994, Sonat implemented a reduction in work force.[1] In accordance with this reduction, Plaintiff lost his job with Sonat. As part of a severance package, he was provided considerable additional benefits in exchange for a waiver and release of any and all claims arising from his employment with Sonat. Plaintiff makes no allegation that his termination on August 31, 1994 was in any way discriminatory. Since July of 1995, Plaintiff has been employed at Amsouth Bank as a personal trust tax accountant.

In November of 1997, Sonat planned to hire two persons into Tax Accountant jobs: one entry level accountant with minimum experience and one senior level accountant with moderate to extensive experience. The job description for these positions provided that a four-year college degree, preferably in accounting, was a minimum qualification, and that being a Certified Public

---

[1] The parties dispute whether the reduction in work force was performance-based. While Sonat asserts that Plaintiff was selected for termination because of his poor work performance, Plaintiff claims that no mention was made about his work and that his position with the company was simply eliminated. Plaintiff offers Sonat's statement to the State of Alabama Department of Industrial Relations describing his dismissal as an "in-voluntary separation without cause" as supportive of his position.

17

Accountant (CPA) or having a Masters in Tax Accountancy (MTA) was a preferred qualification. Additional job qualifications were excellent communication, analytical, and interpersonal skills, as well as being a self-starter but able to work within a team concept. These jobs were originally posted through Sonat's electronic job posting system. However, when only one person responded and that person did not possess the required four-year degree, Sonat advertised the job openings in the Sunday, November 16, 1997 edition of *The Birmingham News*. Plaintiff saw this advertisement and believed that it described the job that he formerly held with Sonat because it listed as job duties some of the same things he had done while at Sonat. Thereafter, Plaintiff left a copy of his resume at Sonat's reception area and asked that it be delivered to the Human Resources Department.

While Sonat has a policy not to rehire former employees, if a supervisor of a particular department determines that a former employee is interested in an available position and is qualified, the supervisor may ask the President for permission to rehire the former employee. In the present case, Dan Langford, the department head, made no attempt to ask the President about the possibility of rehiring the Plaintiff, who was fifty-five years old at the time. Langford testified that he did not do so because he did not consider Plaintiff to be a qualified applicant based upon his past performance while employed with Sonat. During the last few years of Plaintiff's employment with the Defendant, certain areas of his performance were rated as "Provisional" or below standard in company evaluations. While plaintiff's overall performance was considered acceptable in every year except for one, he did fail to meet Sonat standards for certain appraisal periods in the areas of communication, supervisory, and organizational skills. Prior to making his decision that McBrayer was not qualified for the positions advertised, Langford did not review McBrayer's personnel file.

Sonat eventually identified six candidates who were categorized as having senior level experience and ten candidates who were categorized as having entry level experience. Plaintiff was not selected as a possible candidate for either position. The entry level job was filled on January 14, 1998 when Hunter Abercrombie accepted a job offer. Abercrombie possesses a B.S. in Accounting and an MTA degree, both from the University of Alabama. At the time of the job offer, he had passed the CPA examination and had completed approximately fifteen of the twenty-four months in public accounting required for final CPA certification.

The senior level position was never filled. The job was initially offered to Tracy Robertson, a twenty-nine year old female possessing a B.S. in Accounting, an MTA degree, and six years experience as a CPA. However, Ms. Robertson ultimately refused the offer. During the week of March 23, 1998, Sonat instituted a hiring freeze, and consequently the senior level job was never filled.

On May 21, 1998, Plaintiff filed a charge of discrimination with the EEOC, claiming that Sonat had discriminated against him on account of his age. Following the issuance of a Notice of Right to Sue, Plaintiff filed this lawsuit on January 22, 1999, alleging that his failure to be rehired was a result of age discrimination in violation of the ADEA. On September 29, 1999, Defendant filed this Motion for Summary Judgment.

## II. Plaintiff's ADEA Claim

Plaintiff has brought an ADEA claim against the Defendant which alleges that Sonat's failure to rehire him to fill either the entry level or senior level tax accountant position was a result of age discrimination. Plaintiff admits that he has no knowledge of any decision maker at Sonat making any age-related comments and has presented no direct evidence of discrimination on the part of Sonat. As such, Plaintiff must rely on circumstantial evidence to establish his claim. In an ADEA case involving a failure to hire, a plaintiff such as Bobby McBrayer may establish a *prima facie* case through circumstantial evidence by showing the following: (1) that he belongs to a protected class; (2) that he was qualified for a position and applied for it; (3) that he was rejected, despite his qualifications; and (4) that the defendant continued to seek applicants or selected an applicant from outside the plaintiff's protected class after rejecting the plaintiff. *Walker v. Morthram*, 158 F.3d 1177, 1186 (11th Cir. 1998). Once plaintiff has established a *prima facie* case, the employer must then respond with a legitimate, nondiscriminatory reason for its decision. The burden then shifts back to the plaintiff, who must establish that the employer's articulated reason was pretextual in order to survive summary judgment. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).

In the present case, there is a legitimate factual dispute as to whether Plaintiff was qualified for the entry level and senior level tax accountant positions. While Sonat has pointed to Plaintiff's past mediocre performance evaluations in support of its contentions that he was unqualified, Plaintiff did achieved acceptable overall performance ratings while employed by Sonat in every year except for the 1988-89 year. In fact, Plaintiff's final annual review with Sonat, dated January 1, 1993, rates him as achieving company standards and described him as follows: "Overall professional and technical knowledge needs some work, however, [plaintiff] is the best accountant in the compliance group." Plaintiff also had over twenty years of experience working as an accountant for Sonat, including several years as a Senior Tax Accountant and four years as Tax Supervisor. While Plaintiff did not possess an MTA and was not certified as a CPA, there were candidates who were selected to be interviewed for both available positions that also did not possess these credentials. The Eleventh Circuit has recognized that courts should not adhere to "an overly strict formulation of the elements of a prima facie case, particularly in age cases." *Maddow v. Proctor & Gamble Co., Inc.*, 107 F.3d 846, 851 (11th Cir. 1997). Therefore, considering the facts of this case in a light most favorable to Plaintiff, the evidence submitted by Plaintiff was sufficient for him to survive summary judgment with respect to his *prima facie* case.

Despite the fact that a genuine dispute exists regarding whether Plaintiff was qualified to fill either or both of the tax accountant positions offered by Sonat, Defendant is still entitled to summary judgment because the Plaintiff has not offered sufficient evidence that Sonat's nondiscriminatory reasons for not rehiring McBrayer were pretextual. *See Turlington*, 135 F.3d at 1432. Sonat offered the following as its legitimate, nondiscriminatory reasons for not rehiring the Plaintiff: 1) Sonat's policy prohibited rehiring former employees; 2) Plaintiff's past performance rendered him unqualified; and 3) the individuals hired or offered the jobs were more qualified than the Plaintiff. Because Plaintiff has offered no real evidence which suggests that Defendant's decision not to consider him for rehire was motivated by anything other than his past performance, Plaintiff's ADEA claim is due to be dismissed.

Since January 1, 1997, Sonat's general policy provides that former employees are not eligible for rehire. Sonat's policy further provides that "[e]xceptions to this policy may be granted only with the written approval of the President of the employing company." If a supervisor of a particular department determines that a former employee is interested in an available job and is a qualified applicant, however, the supervisor may ask the President about the possibility of rehiring the former employee. It was this policy that led Dan Langford, the department head involved in the decision-making process in this case, to make a determination that Plaintiff's past performance rendered him unqualified for the positions and that a recommendation to the President concerning his rehiring was unnecessary. As evidence that Langford's reason for not considering McBrayer was pretextual, Plaintiff points to the fact that his last performance evaluation rated him as achieving company standards and the fact that Langford did not look back over the Plaintiff's personnel file prior to making the determination that he was unqualified. Yet, Langford had personal knowledge of Plaintiff's past performance because he had worked with the Plaintiff from 1982 to 1994 and played a role in his inclusion in the 1994 reduction in force. Furthermore, despite the fact that Plaintiff was rated as achieving company standards in his most recent evaluation, the evidence submitted in this case is generally supportive of the conclusion reached by Langford. Plaintiff's performance evaluations, including those where he achieved acceptable overall ratings, indicate that during his employment with Sonat he demonstrated considerable weaknesses in some of the performance areas identified as critical to the success of the positions at issue, including excellent communication, analytical, and interpersonal skills. The fact that Plaintiff disagrees with Langford's assessment of his past performance is of little consequence, considering that the "heart of the pretext inquiry is not whether the employee agrees with the reasons [given by the employer], but whether the employer really was motivated by those reasons." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). Therefore, because the Plaintiff has not offered sufficient evidence to establish that Langford did not actually believe that Plaintiff's past performance rendered him unqualified to fill the tax accountant positions, summary judgment is appropriate at this time.

III. Conclusion

For the above reasons, Defendant's Motion for Summary Judgment is due to be granted.

Dated: Nov. 22, 1999

Chief Judge Sam C. Pointer, Jr.

Service List:

Lee David Winston
Shannon L. Powell
Chris Mitchell